# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMMY S. GUZMAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. EDCV 08-01862 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

　　Sammy Guzman ("Guzman") filed this action on December 26, 2008. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on January 16 and February 23, 2009. (Dkt. Nos. 8, 9.) On October 1, 2010, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

　　Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///

///

///

**I.**

**PROCEDURAL BACKGROUND**

On December 22, 2004, Guzman filed an application for supplemental security income, alleging a disability onset date of June 4, 1993. Administrative Record ("AR") 90-103. The application was denied initially and upon reconsideration. AR 51-55, 58-63. Guzman requested a hearing before an Administrative Law Judge ("ALJ"). AR 64. On August 2, 2006, the ALJ conducted a hearing at which Guzman and a vocational expert testified. AR 310-47. On October 24, 2006, the ALJ conducted a supplemental hearing at which Guzman, a vocational expert and a medical expert testified. AR 348-60. On November 17, 2006, the ALJ issued a decision denying benefits. AR 11-20. On December 8, 2006, Guzman requested that the Appeals Council review the decision denying benefits. AR 7. On July 3, 2007, the Appeals Council denied the request for review. AR 4-6. On August 27, 2007, Guzman filed a complaint in this Court. On March 24, 2008, both parties stipulated to a voluntary remand. AR 384-85. On March 25, 2008, this Court issued a remand order. AR 381-83. On May 2, 2008, pursuant to the remand order, the Appeals Council vacated the decision and remanded the case for further proceedings. AR 379-80.

On August 12, 2008, the ALJ conducted a hearing at which Guzman gave further testimony. AR 557-64. On October 7, 2008, the ALJ issued a decision denying benefits. AR 364-76. This action followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

### III.
### DISCUSSION

#### A.   Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

#### B.   The ALJ's Findings

The ALJ found that Guzman had the severe impairments of left eye blindness and degenerative disc disease of the back.  AR 367.  Guzman had the residual functional capacity ("RFC") to perform a range of light work consisting of the following: "lift up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 2 hours out of an 8-hour work day; sit for 6 hours out of an 8-hour work day; no climbing ladders, ropes, and scaffolds; and no work that requires fine vision due to left eye blindness."  AR 368.

Guzman has no past relevant work but "there are jobs that exist in significant numbers in the national economy that he can perform," such as

///

assembler, cafeteria attendant, buttons/notions assembler, optical assembler and agricultural sorter. AR 374-75.

### C. Mental Impairment

Petitioner argues that at step two of the sequential analysis the ALJ improperly determined that his mental impairment of depression was not severe. JS 3-5.

At step two, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not less than 12 months. *Id.* at 140.

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 404.1508; 20 C.F.R. § 416.908. "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[1]

---

[1] Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) the use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b); Social Security Ruling ("SSR") 85-15. Social security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations" and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

4

*Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen v. Chater*, 80 F.3d at 1273, 1290 (9th Cir. 1996) ("[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and quotation marks omitted).

"An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted).  Step two is "a *de minimis* screening device [used] to dispose of groundless claims" and the ALJ's finding must be "clearly established by medical evidence." *Id.* at 687 (citations and quotation marks omitted).  "[T]he ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290.

The ALJ explained that in finding Guzman's mental impairment of depression non-severe and causing no more than a minimal limitation in his ability to perform basic mental work activities, he "considered the four broad functional areas set out in the disability regulations for evaluating mental disorders." AR 367.  Applying that analytic framework, the ALJ determined:

> The first functional area is activities of daily living.  In this area, the claimant has no limitation.  The next functional area is social functioning.  In this area, the claimant has mild limitation.  The third functional area is concentration, persistence or pace.  In this area, the claimant has no limitation.  The fourth functional area is episodes of decompensation.  In this area, the claimant has experienced no episodes of decompensation.  Because [Guzman's] medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" limitation in the fourth area, it is nonsevere (20 CFR 416.920a(d)(1)).

AR 367-68.

Even assuming that omission of a mental impairment constituted legal error at step two, such error was harmless. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Any prejudice to Guzman could occur only at step five because all other steps were decided in his favor. *Id.* The RFC assessment takes into account limitations imposed by all impairments, even those that are not severe. *Id.* at 683 (citing SSR 96-8p).

### D. Psychiatrist's Opinion

Guzman argues that the ALJ failed to give proper consideration to Dr. Dey's Global Assessment Score ("GAF") score of 50 in December 2005. Dr. Dey recited Guzman's subjective complaints of mood swings, irritability, lability, angry outbursts, depression, despondency, dysphoria, crying spells, apathy, anhedonia, anxiety, nightmares, decreased activities, insomnia, tiredness, fatigue, low energy level, nervousness, hopelessness, helplessness, worthlessness, paranoid ideation, delusional thinking, and death wishes. AR 303.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and quotations omitted). When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors, including the following: (1) length of the

///
///
///
///
///

treatment relationship and frequency of examination;[2] (2) nature and extent of the treatment relationship;[3] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) consistency with record as a whole; and (5) the specialty of the physician providing the opinion. *See id.* at 631; 20 C.F.R. § 404.1527(d)(1)-(6).

The ALJ discounted Dr. Dey's GAF score of 50 because his "mental status examinations d[id] not support this assessment." AR 373. The ALJ found that Dr. Dey's mental status examination was normal except Guzman appeared mildly anxious but not agitated and did not establish eye contact. AR 373 (citing AR 303). The ALJ's finding is supported by substantial evidence. Dr. Dey's mental status examination found that Guzman "was mildly anxious but not agitated. He was neatly dressed and fairly groomed. He was not able to establish good eye contact. His speech was clear, audible, understandable and not pressured. Thoughts were relevant and coherent, and verbalized in a free flowing manner. There was no evidence of a florid thought disorder. The patient denied experiencing hallucinations, or having a plan to harm himself." AR 303. Subsequent records indicate Guzman experienced less difficulty with anxiety and paranoia, slept better at night and had mild difficulty with mood swings. AR 304-06. He had increased difficulty with anxiety only after being incarcerated. AR 307. Dr. Dey did not identify any functional work limitations. The ALJ further noted that Dr. Dey appeared to have copied his treatment notes from month to month. AR 372. An ALJ may properly reject a treating physician's opinion that is

---

[2] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i).

[3] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

7

not supported by clinical findings. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted); *Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Moreover, as noted by the ALJ, a GAF score is not determinative of mental disability for Social Security purposes. AR 373; *see* 65 Fed. Reg. 50746, 50765 (Aug. 21, 2000) ("[the GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."). The ALJ did not err.

### E.  Social Worker's Opinion

Guzman argues the ALJ failed to properly consider the mental health evaluation completed by Mr. Hilliard, a social worker. On April 10, 2006, Hilliard completed a "Brief Mental Health Evaluation Review" and diagnosed Guzman with "major depressive d/o, severe, w/ psychotic features" and a GAF score of 52. AR 299.

The ALJ discounted Hilliard's assessment because he was "not considered to be [an] acceptable medical source[]." AR 373. A social worker is not an acceptable source of medical evidence of an impairment. 20 C.F.R. §§ 404.1513(a), (d), 416.913(a)(d). Such evidence may be used "to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d)-(e). An ALJ may properly discount such testimony without satisfying the legal standards applicable to a treating physician. *Bunnell v. Sullivan*, 912 F.2d 1149, 1152 (9th Cir. 1990) ("there is no requirement that the Secretary accept or specifically refute such evidence"), *rev'd on other grounds*, 947 F.2d 341, 348 (9th Cir. 1991). The ALJ also noted Hilliard's records reflect that Guzman said he suffered brain injury as the result of a gunshot wound, but the treatment records from the incident do not evidence brain injury. AR 372.

The ALJ did not err.

///

///

### F.     Treating Physician's Opinion

Guzman argues that the ALJ did not properly consider his treating physician's opinion that he was unable to work.  JS 9.

A treating physician's opinion as to the ultimate determination of disability is not binding on an ALJ.  *McLeod v. Astrue*, 634 F.3d 516, 520 (9th Cir. 2011).  The existence of disability "is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity" and is reserved to the Commissioner.  *Id*.

On May 12, 2006, Dr. Piamprasatporn ("Dr. Piam") opined that Guzman was unable to work through May 12, 2007.  AR 283.  He stated Guzman could not travel far due to leg, foot and back problems.  AR 284.

After correctly noting that Dr. Piam's opinion as to disability was not binding, the ALJ discounted his opinion because "there is no evidence of a leg or foot impairment, or that the claimant's back impairment makes it difficult for him to travel."  AR 373.  Dr. Piam's treatment notes do not contain evidence of leg or foot impairments that restricted Guzman's ability to travel.  AR 216-19; *see* 144.  Nor is there any notation as to back problems that restricted Guzman's ability to travel.  Guzman does not cite anything in Dr. Piam's notes to the contrary.  "'[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  *Bray*, 554 F.3d at 1228 (citation omitted); *Batson*, 359 F.3d at 1195; 20 C.F.R. § 416.927(d)(2).  Moreover, the ALJ stated that, on May 9, 2007, Dr. Piam observed that Guzman was narcotic seeking.  AR 370, 476.  On May 15, 2007,

///
///
///
///

9

Dr. Piam refused to give further refills of Vicodin and indicated Guzman find another primary care physician.[4] AR 370, 475.

In February 2005, examining physician Dr. Lee opined that Guzman was able to stand and walk up to six hours and sit for six hours out of an eight-hour workday. AR 143. Dr. Lee also observed that Guzman "ambulates across the room by himself with slow, normal gait without the cane that he brought with him." AR 142; *see also* AR 207 ("Gait appears steady without a cane."). "Strength is 5/5 throughout, without focal motor deficits." AR 142. An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings. *Orn*, 495 F.3d at 631. A non-examining physician's opinion constitutes substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). In March 2005, state agency physician Dr. Haaland agreed with a light RFC assessment. AR 156.

The ALJ did not err.

### G. Duty to Develop the Record

It is the claimant's duty to prove he is disabled. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *see* 42 U.S.C. § 423(d)(5)(A) (the claimant must furnish medical and other evidence of her disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

"The ALJ . . . has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted). "An ALJ's duty to develop the record further is triggered only when there is

///

---

[4] A later medical record also indicates that Guzman would not be given pain medication. AR 370, 471.

10

ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60.

### (1) Dr. Piam's opinion

Plaintiff argues that the ALJ to failed to "put forth any effort to contact Dr. Piam to obtain clarification regarding his disability opinion." JS 16. Rejection of a treating physician's opinion as to disability does not by itself trigger a duty to contact the physician for more explanation. *McLeod*, 634 F.3d at 520. Dr. Piam's medical records are in the record. AR 214-91, 475-79. The ALJ made no finding that the evidence was ambiguous or that the record was inadequate to allow for proper evaluation. *See Mayes*, 276 F.3d at 459-60 ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). Under these circumstances, the ALJ did not have a duty to recontact Dr. Piam. *McLeod*, 634 F.3d at 521; *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ did not err.

### (2) Dr. Dey's GAF Score

The ALJ discounted Dr. Dey's GAF score of 50 on the ground that it was not supported by Dr. Dey's mental status examinations. AR 373. The ALJ cited Dr. Dey's mental status examination, which was normal except that Guzman appeared mildly anxious but not agitated, and did not establish eye contact. AR 373 (citing AR 303).

Guzman argues that, under these circumstances, the ALJ failed to develop the record. JS 20. The record contains Dr. Dey's medical records. AR 302-07. As discussed above, rejection of Dr. Dey's opinion did not by itself trigger a duty to recontact Dr. Dey. *McLeod*, 684 F.3d at 520. The ALJ did not err.

///
///
///

11

### H. State Agency Physician's Opinion

Guzman contends that the ALJ failed to consider state-agency physician Dr. Haaland's "Physical Residual Functional Capacity Assessment" (PRFCA) in March 2005. JS 16-17; AR 157-64.

A non-examining physician's opinion cannot by itself constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041.

The ALJ found that Dr. Haaland's opinion was consistent with his RFC assessment. AR 374. Dr. Haaland stated that he would complete a RFC for the light level. AR 156. Guzman argues that the ALJ did not include in his RFC assessment the portion of Dr. Haaland's PRFCA that stated Guzman should avoid concentrated exposure to extreme cold and hazards, and also avoid uneven terrain. AR 161. Dr. Haaland does not state the basis of his environmental limitations. AR 156, 161.

Dr. Haaland's opinion alone does not constitute substantial evidence, and his environmental limitations are not corroborated by any treating or examining physician.[5] Even assuming error, the party attacking an agency's determination has the burden to show prejudice. *McLeod*, 684 F.3d at 522. "Mere probability is not enough. But where the circumstances of the case show a substantial likelihood of prejudice, remand is appropriate so that the agency 'can decide whether re-consideration is necessary.'" *Id.* at 523 (citation omitted). Here,

---

[5] The examining physician Dr. Lee's report in February 2005 contained no such restrictions and observed Guzman ambulates "by himself with a slow, normal gait without the cane that he brought with him." AR 142-43. A later radiology report of the left knee showed no significant findings. AR 144. Dr. Lee noted Guzman's subjective complaints about having difficulty walking. However, the ALJ discounted Guzman's credibility, and Guzman does not challenge that finding. The ALJ further noted that Dr. Cipta, a treating physician, observed Guzman's gait was steady without an assistive device. AR 369; *see* AR 207.

12

Guzman does not identify any substantial likelihood of prejudice, particularly given that Dr. Haaland's environmental limitations are not corroborated by any treating or examining physician. The ALJ's decision found that Dr. Piam's treatment records do not evidence a leg, foot or back impairment that makes it difficult for Guzman to travel. AR 373. In addition, Guzman does not point out any inconsistency between Dr. Haaland's environmental limitations and the representative jobs identified by the ALJ at step five of the sequential analysis.[6] AR 375.

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 18, 2011

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[6] The ALJ's hypothetical to the vocational expert contained limitations not included in the ALJ's RFC assessment. The hypothetical precluded Guzman from climbing ladders, ropes or scaffolds. AR 340.